# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**COLETTE Y. AUSTIN,**

          **Plaintiff,**

      v.                                                    Case No. 19-CV-443

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

          **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Plaintiff Colette Austin alleges that she has been disabled since October 3, 2014 (Tr. 23) and seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 644-75) and upon reconsideration (Tr. 610-41), a hearing was held before an administrative law judge (ALJ) on April 11, 2017 (Tr. 593-607). On May 2, 2018, the ALJ issued a written decision concluding Austin was not disabled. (Tr. 23-37.) After the Appeals Council denied Austin's request for review on January 30, 2019 (Tr. 1-4), Austin filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 15, 16), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Austin "has not engaged in substantial gainful activity since October 3, 2014, the alleged onset date[.]" (Tr. 26.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Austin has the following severe impairments: "coronary artery disease, status-post heart attack, and lupus[.]" (Tr. 26.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a

severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Austin "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 28.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Austin has the RFC "to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (Tr. 29.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Austin "is capable of performing past relevant work as a customer service representative[.]" (Tr. 35.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education,

and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform[.]" (Tr. 36.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

## 4. Analysis

Austin argues that the ALJ erred by "fail[ing] to obtain a valid waiver of [her] statutory right to counsel" (ECF No. 10 at 17-18), not "adequately developing the record" (*id.* at 18-20), and not "account[ing] for [her] concentration issues in the RFC" (*id.* at 20-22).

### 4.1. Waiver of Right to Counsel

Austin was not represented by counsel at the hearing before the ALJ. It is well-established in the Seventh Circuit that when a claimant appears unrepresented before an ALJ the ALJ must advise her of the availability of counsel. The Court of Appeals for the Seventh Circuit has been very clear as to what is necessary before an individual may be deemed to have waived her statutory right to be represented at a hearing before an ALJ:

> To ensure valid waivers, ALJs must explain to pro se claimants "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees."

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)). However, the regulations demand less and "require the agency simply to notify the claimant in writing of his 'options for obtaining attorneys,' and the 'organizations which provide legal services free of charge.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting 42 U.S.C. § 1383(d)(2)(D); 20 C.F.R. § 404.1706).

5

"If the ALJ does not obtain a valid waiver, the matter must be remanded for a new hearing unless the Commissioner can establish 'that the ALJ fully and fairly developed the record.'" *Beth v. Astrue*, 494 F. Supp. 2d 979, 1000 (E.D. Wis. 2007) (quoting *Binion*, 13 F.3d at 245). While "[t]he ALJ does not act as counsel for claimant, but as an examiner who thoroughly develops the facts," the record must reflect that the claimant did not suffer prejudice from her lack of counsel. *Thompson*, 933 F.2d at 586 (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)). If the Commissioner can establish this, "the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap." *Binion*, 13 F.3d at 245.

The ALJ here did not inform Austin of the limitation on attorney fees to twenty-five percent of past due benefits. (Tr. 594.) Even so, the Commissioner defends the sufficiency of Austin's waiver and further argues that, even if Austin's waiver was deficient, the ALJ adequately developed the record. (ECF No. 17 at 4-9.)

In January 2015 Austin was sent a written notice of her hearing. (Tr. 715-19.) The notice stated:

> You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.
>
> Many representatives charge a fee. Some representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. If you get a representative, you or that person must notify us in writing.

(Tr. 717.) Attached to the notice was a pamphlet entitled, "Your Right to Representation." (Tr. 722-23.) The pamphlet contains all of the information the Seventh Circuit says an ALJ must provide to a claimant regarding her right to an attorney. Austin signed an acknowledgement of receipt of the notice of hearing. (Tr. 735.)

At Austin's hearing the ALJ stated:

> So, I want to make sure on the record you understand your right to representation. You have the right to be represented by an attorney or a non-attorney. A representative can obtain and submit evidence, explain medical terms, explain the Social Security Administration's procedures, and otherwise help protect your rights. A representative may not charge a fee or receive a fee unless it's approved by the Social Security Administration. And there are legal service organizations that offer legal representation free of charge if you meet the qualifying requirements for the organization. You also have the right to proceed without a representative. If you do so, I will question you at the hearing and obtain the relevant evidence. Nevertheless, the representative can present the evidence in the way that is the most favorable to your claim.

(Tr. 594.) The ALJ asked Austin if she understood her right to representation and if she nevertheless "wish[ed] to proceed today without a representative." (*Id.*) Austin answered "Yes" to both questions. (*Id.*) But she also said: "[I]f I could afford it, I would have had a lawyer, but I couldn't. I know you said at the beginning that they get paid after but the ones I was calling wanted money up front. And I wasn't financially stable for that." (Tr. 603.)

Austin argues that "receiving the pamphlet is irrelevant *if* subsequent evidence strongly suggests the claimant did not read nor comprehend said written notice." (ECF No. 18 at 3 (emphasis in original).) She also argues that, because her statement at the

7

hearing showed she was "unfamiliar" with the organizations and fee structures of available attorneys, "it should be presumed that she also came into the hearing unapprised of the 25 percent cap on past due benefits." (*Id.*; *see* Tr. 603.)

"[S]o long as it contains the required information, written notice adequately apprises a claimant of [her] right to counsel." *Jozefyk*, 923 F.3d at 497. And "[t]hat's especially true when the ALJ issues the claimant an oral reminder at the hearing." *Id.* Austin received the pamphlet, acknowledged its receipt, and was reminded of her rights at the hearing by the ALJ before affirmatively waiving her rights and continuing with the hearing. This was enough to waive her right to counsel. *See also John L. v. Berryhill*, No. 17 C 7537, 2019 WL 2601353, at *6 (N.D. Ill. June 25, 2019) ("The fact that Claimant was informed of his rights by mail instead of by the ALJ herself does not invalidate his waiver.") (citing *Josefyk* [sic], 923 F.3d at 497).

### 4.2. Concentration Issues

It is well-established that "[b]oth the RFC and the hypothetical question presented to a VE [vocational expert] must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (unpublished) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). "The ALJ need not use this exact terminology, so long as the phrasing 'specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform.'" *Id.* (quoting *O'Connor-Spinner*, 627 F.3d at 619)

(alteration in original); *see Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.") (emphasis in original).

Austin argues that the ALJ did not account for her difficulties in concentration in the RFC and impermissibly "substitut[ed] her judgement [sic] for that of the medical professionals." (ECF No. 10 at 20-22.) In response the Commissioner argues that "the ALJ reasonably explained why any opinion of more than mild-concentration problems deserved little weight." (ECF No. 17 at 11.)

State agency psychological consultants Dr. Julie Bruno and Dr. Carlos Jusino-Berrios, and licensed psychologist Dr. Kelly Schinke all opined (verbatim) that "Ms. Austin may have difficulty maintaining concentration and attention. She reported that she easily loses focus. She showed some difficulty being attentive on the mental status exam."[1] (Tr. 614, 630, 653, 669, 1100.) Drs. Bruno and Jusino-Berrios also found that Austin would be moderately limited in her "ability to maintain attention and concentration for extended periods." (Tr. 622, 628, 657, 673.)

Regarding concentration and these doctors' opinions, the ALJ stated:

---

[1] It appears from the record that State agency medical consultant Andrew Przybyla, M.D. also gave this opinion. (Tr. 646, 651, 662, 667.)

9

[Austin] saw Kelly Schnike, Psy.D., in February 2015 for a psychological consultative examination. [Austin] complained of anxiety, lack of focus, constant worry, panic attacks, racing thoughts, difficulty concentrating, and sleep disturbances.…In testing, [Austin] recalled three words immediately and after a four-minute delay, correctly recalled a six number digit span tasks, identified two of the four states bordering Wisconsin, and correctly spelled the word "world" forwards and backwards. Dr. Schnike diagnosed [Austin] with panic disorder without agoraphobia and persistent depressive disorder-provisional.

…

The third functional area is concentrating, persisting, or maintaining pace. In this area, [Austin] has a mild limitation. [Austin] complained of problems with focus, concentration, and motivation. While she had some problems counting backwards from 100 by seven, she correctly followed a three-step command, named the days of the week backwards, and spelled the word "world" forwards and backwards. Moreover, she reported she makes lists, keeps a calendar, tracks her cash, uses checks and ATMs, pays bills, and manages bank accounts. Additionally, there was no evidence in the treatment notes showing [Austin] had any significant deficits in concentration, persistence, or maintenance of pace. Thus, [Austin] has no more than a mild limitation in concentrating, persisting, or maintaining pace.

…

The [State agency psychological consultants, Carlos Jusino-Berrios, M.D., and Julie Bruno, Psy.D] opined [Austin] had moderate difficulties in maintaining concentration, persistence, or pace and no repeated episodes of decompensation, each of extended duration.

I find the opinions of Dr. Jusino-Berrios and Dr. Bruno entitled to little weight because the evidence does not support finding [Austin] as limited as they opined. While the record showed diagnoses for anxiety and depression, she only occasionally appeared tearful and only had intermittent abnormalities in mood and affect. Other than those issues, there was no evidence showing any great deficits in memory, comprehension, concentration, attention, motivation, or pace. Additionally, the consultative examination revealed only minor deficit in concentration

because she incorrectly counted from 100 by sevens. Otherwise, she had mostly normal results. Thus, I find the opinions of the State agency psychological consultants entitled to little weight.

(Tr. 26-27, 28, 33-34 (internal citations omitted).)

In support of the finding of a mild limitation, the ALJ stated that Austin "makes lists, keeps a calendar, tracks her cash, uses checks and ATMs, pay [sic] bills, and manages bank accounts." (Tr. 28.) She also cited her ability to follow simple commands, spell a word forwards and backwards, and state the days of the week backwards. (*Id.*) However, it is not clear how any of these tasks relate to an ability to concentrate for a full day of work. None of the activities are necessarily inconsistent with a claim of disability. By simply listing a few activities of daily living in which Austin reported engaging, the ALJ failed to support her conclusion that Austin was mildly limited in her concentration persistence, and pace with substantial evidence. Accordingly, on remand, the ALJ shall reconsider Austin's limitations in concentration, persistence, and pace and support that finding with substantial evidence.

After reconsidering the limitation in concentration, persistence, and pace, the ALJ should then at a rehearing ask the VE about a hypothetical individual with this limitation. Generally, deciding whether to use a VE is a discretionary decision for the ALJ. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (citing 42 U.S.C. §404.1566(e)). However, "[the United States Court of Appeals for the Seventh Circuit] has said that in cases where a non-exertional limitation might substantially reduce a range of

work an individual can perform, the ALJ must consult a vocational expert." *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). And "[a]mong the limitations the VE must consider are deficiencies of concentration, persistence, and pace." *O'Connor-Spinner*, 627 F.3d at 619 (citing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)) (footnote omitted).

The record contained numerous examples of a concentration limitation, (Tr. 612, 614, 617, 618, 622, 628, 630, 633, 634, 638, 645, 646, 651, 653, 657, 662, 667, 669, 673, 851, 1096, 1099, 1100), and Austin testified during the hearing that "not being able to focus" is one thing that prevents her from working (Tr. 598). As such, the ALJ should have utilized the VE and asked her whether someone with limitations in concentration would be capable of full-time work.

Accordingly, on remand the ALJ should first reconsider Austin's concentration limitations and include good reasons supported by substantial evidence for the limitation. Then the ALJ should ensure that Austin's limitation in concentration, persistence, and pace is included in the hypothetical questions posed to the VE and in the RFC. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.").

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of March, 2020.

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
U.S. Magistrate Judge